IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| **ROBERT B. DOYLE and BEHAVIOR MANAGEMENT SYSTEMS, INC.** § § § § | |
| Plaintiffs § § | CASE NO. 4:20cv1234-JM |
| v. § § | |
| **ARKANSAS DEPARTMENT OF EDUCATION,** § § § | This case assigned to District Judge Moody and to Magistrate Judge Deere |
| Defendant § § | |

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
OCT 15 2020
JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

---

# COMPLAINT

---

Robert B. Doyle and Behavior Management Systems, Inc. for their Complaint state:

## I. INTRODUCTION

1. For 36 years, Robert B. Doyle, individually and doing business as Behavior Management Systems, Inc., contracted with the Arkansas Department of Education ("ADE") to work as an impartial due process hearing officer pursuant to the Individual with Disabilities Education Act ("IDEA"). This case arises out of ADE's abrupt decision to cancel Doyle's contract. ADE's decision to cancel Doyle's contract violated the terms of the

contract, denied Doyle due process of law and constituted unlawful retaliation for Doyle's protected activity – holding a school district accountable for its clear violation of the IDEA.

## II. JURISDICTION AND VENUE

2. Doyle seeks relief pursuant to 42 U.S.C. §1983 (due process), 29 U.S.C. §794(a) (disability discrimination/retaliation) and 42 U.S.C. §12132 (disability discrimination/retaliation). Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question) and §1343(a) (civil rights). This Court may also exercise supplemental jurisdiction over Doyle's state law breach of contract claim pursuant to 28 U.S.C. §1367(a).

3. This Court is the proper venue for Doyle's claims. *See* 28 U.S.C. §1391(b). Doyle resides in Pulaski County, Arkansas. Behavior Management Systems, Inc. is an Arkansas corporation with its principal place of business in Pulaski County, Arkansas. The ADE's principal place of business is in Pulaski County, Arkansas. The events giving rise Doyle's Complaint occurred in Pulaski County, Arkansas. Pulaski County, Arkansas is in the Eastern District of Arkansas, Western Division. *See* 28 U.S.C. §83.

## COUNT I

## BREACH OF CONTRACT

4. On 17 September 2017, ADE and Doyle, doing business as Behavior Management Systems, Inc., entered into a Professional Consultant Services

Contract for Doyle to serve as an impartial due process hearing officer pursuant to the IDEA. A true and correct copy of the contract is attached hereto as **Exhibit A**. The term of the contract was 17 September 2017 to 30 June 2019. However, the contract was subject to extension through 30 June 2024.

5.  This contract was the last in a series of contracts between ADE and Doyle. Doyle worked as an impartial due process hearing officer for ADE for 36 years. He has been recognized nationally for his knowledge and expertise as an impartial due process hearing officer. Doyle's contracts were regularly and routinely renewed and extended, and he reasonably expected that his contract would be extended through 30 June 2024.

6.  On 4 October 2017, ADE evaluated Doyle's performance as an impartial due process hearing officer and rated his performance as meeting standards.

7.  On 8 December 2017, the Fayetteville School District ("FSD") objected to Doyle hearing a due process complaint against FSD. On or about 15 December 2017, the ADE denied FSD's objection finding Doyle met all of the qualifications required by the IDEA and ADE rules and acted within the authority granted to hearing officers. ADE further found insufficient evidence to substantiate the allegation that Doyle was biased.

8.  On 10 January 2018, ADE evaluated Doyle's performance as an

impartial due process hearing officer and rated his performance as meeting standards.

9. On 23 March 2018, the Vilonia School District ("VSD") filed a request for an expedited due process hearing for the purpose of excluding Student A from school as a danger to himself and others. The expedited due process hearing request was assigned by ADE to Doyle.

10. On 27 March 2018, VSD filed a request for a preliminary injunction in this Court seeking to exclude Student A from school as a danger to himself and others.

11. On 11 April 2018, this Court (the honorable Kristine G. Baker presiding) granted VSD a preliminary injunction until a decision was reached by Doyle in the expedited due process hearing.

12. On 25 April 2018, Doyle issued his final decision and order on VSD's expedited due process hearing request finding in favor of Student A and ordering Student A returned to school. Even so, VSD refused to allow Student A to return to school. Student A asked this Court for a preliminary injunction ordering VSD comply with Doyle's decision and allow him to return to school. In response, VSD continued to argue Student A was a danger to himself and others and should be excluded from school.

13. On 14 May 2018, this Court granted Student's A's request for a preliminary injunction ordering VSD to allow Student A to return to school

(as Doyle had ordered). This Court found that "[VSD] unilaterally opted not to follow the law." *Vilonia Sch. Dist. v. M.S.*, E.D. Ark. No. 4:18-cv-00219-KGB, p. 7 (May 14, 2018). The Court criticized the District noting, "VSD has violated, and continues to violate, orders by the state hearing officer [Doyle] as well as this Court." *Id.* at 12. *See id.* at 15 ("Moreover, and without seeking appropriate relief to do so, [VSD] has failed to comply with multiple orders from the hearing officer and this Court – unilaterally opting to violate the law.").

14.   This Court's 14 May 2018 decision angered VSD and its patrons who lashed out at Student A, his parents, Doyle and counsel for Student A. For example, a VSD teacher trolled Doyle and counsel for Student A online and on social media. On 16 May 2018, he posted an ArkansasOnline article about the Court's decision on social media and commented:

> Read this to the end…all the way to the end. Then ask yourself if the courts and Dr. Robert Doyle give one tinker's damn about the safety of school kids in Arkansas! EVERYONE needs to call the judge AND [ADE] about this! EVERYONE in the state of Arkansas who cares about the safety of kids! READ THIS TO THE END to see what kind of threats kids can make and a district can be ORDERED to let them return to school! And call this ambulance chasing Theresa Caldwell too! Clog up her phone lines!

IMG_3328.PNG. On 24 June 2018, an article appeared announcing this VSD teacher was named "School Employee of the Year." This, combined with VSD's deliberate decision to ignore orders of this Court and Doyle, gives rise to an

5

inference that VSD supported efforts to retaliate against Doyle for his decision ordering Student A returned to school.

15. The Arkansas State Board of Education is responsible for ensuring that Arkansas school districts comply with IDEA and the decisions of due process hearing officers. *See* 20 U.S.C. §1412(11), (12); Ark. Code Ann. §6-41-207. The State Board of Education has delegated this responsibility to ADE. ADE's Special Education Unit ("ADE-SEU") is responsible for implementing a monitoring system to ensure school districts comply with the IDEA and hearing officer's decisions. Even so, ADE-SEU took no action against VSD despite this Court finding that VSD deliberately violated the IDEA and orders of the Court and Doyle as to Student A.

16. Rather than taking action against VSD for its deliberate violation of the IDEA, ADE-SEU moved forward with hiring VSD's former Director of Special Education, Matt Sewell, as Assistant Director of Special Education, starting on or about July 1, 2018. As a part of the hiring process, ADE-SEU and Sewell presumably discussed Student A's case and the actions of VSD therein, and the ADE-SEU adopted the view that the problem was Doyle – not VSD. Accordingly, in retaliation for his decisions in Student A's case, ADE-SEU began looking for a pretext for cancelling Doyle's contract.

17. On 16 May 2018, Lisa Tyler, ADE's Associate Director of Special Education, forwarded to Courtney Salas-Ford, an ADE attorney, a June 2017

complaint against Doyle stating, "This may help." Tyler's decision to resurrect this almost year-old complaint against Doyle without any explanation gives rise to an inference that ADE personnel were told to look for a pretext for cancelling Doyle's contract.

18. On 3 July 2018, the ADE decided to hire *two* new hearing officers even though only *one* hearing officer's contract (Garry J. Corrothers) was not renewed for the 2017-19 biennium. This gives rise to an inference that ADE had already decided to cancel Doyle's contract in retaliation for his decisions in Student A's case.

19. On 12 July 2018, ADE evaluated Doyle's performance as an impartial due process hearing officer and rated his performance as meeting standards.

*20.* On 3 October 2018, ADE evaluated Doyle's performance as an impartial due process hearing officer and for the first time in 36 years rated his performance as below standards. The "Comments" section of the report states, "Hearing Decisions (Orders) lack sufficient legal analysis and application of law. Although containing citation to precedents, there is little substantive reasoning or explanation as to why the decision was reached and what facts made up the basis for that decision in the assigned case." However, while the "Comments" suggest review of more than one decision and/or order, Doyle only issued one substantive order between 12 July 2018,

when he met standards, and 3 October 2018, when he allegedly did not meet standards. Deciding Doyle did not meet standards based on one substantive order issued after 36 years as a hearing officer gives rise to an inference that the "Comments" were a pretext for cancelling Doyle's contract.

21. On 5 September 2018, Doyle issued an Order on Motion to Amend and Motion to Continue in ADE-SEU case number H-19-03. That order accurately applies the law to the facts of that case.

22. Doyle was never given notice of or an opportunity to respond to the 3 October 2018 evaluation finding he did not meet standards or the "Comments" contained therein.

23. On 16 October 2018, Sewell confirmed that Doyle had been "rated down" on his evaluation before approving the letter cancelling Doyle's contract. This gives rise to an inference that Doyle's evaluator was instructed to "rate down" Doyle as a pretext for the canceling his contract. It seems likely that Sewell was waiting until after the 3 October 2018 evaluation to cancel Doyle's contract because Doyle was rated satisfactory on 12 July 2018.

24. By letter dated 16 October 2018, ADE cancelled Doyle's contract stating, "A review of your decisions and transcripts has shown that you do not meet the minimum qualifications of a hearing officer under the IDEA." As noted above, Doyle only issued one order between 12 July 2018, when he

met standards, and 3 October 2018, when he allegedly did not meet standards. Deciding Doyle did not meet standards based on one order issued after 36 years as a hearing officer gives rise to an inference that the reason for cancellation was a pretext for retaliating against Doyle for his decisions in Student A's case.

25.  Doyle was never given notice of or an opportunity to respond to allegations made in the 16 October 2018 letter canceling his contract.

26.  The parties' contract provides for cancellation of the contract on 30 days notice if ADE no longer needs Doyle "due to program changes, changes in laws, rules, or regulations, [or] relocation of offices . . . ." **Exhibit A, ¶12(B)**. There were no "program changes, changes in laws, rules, or regulations, [or] relocation of offices . . . ." that justified ADE's decision to cancel Doyle's contract.

27.  ADE's retaliatory intent in cancelling Doyle's contract may also be inferred from the very different treatment of another due process hearing officer – who is *not* impartial and who always rules *against* parents or otherwise denies parents appropriate relief – Michael McCauley. McCauley's bias and general incompetence is currently the subject of a federal lawsuit seeking to have McCauley removed as an ADE hearing officer because he lacks the requisite qualifications. *See Does v. Johnny Key*, E.D. Ark., No. 4:20-cv-00104-BSM, Dkt. No. 14 (September 1, 2020)

(Order denying Motion to Dismiss).

28.  In short, almost all ADE's reasons for cancelling Doyle's contract applied to an equal or greater degree to McCauley. In other words, Doyle and McCauley were similarly situated (or Doyle compared more favorably) in all relevant respects. Even so, ADE is fighting to retain McCauley, whereas it cancelled Doyle's contract.

29.  As a direct and proximate result of ADE's breach of contract, Doyle has lost and will continue to lose income and the other benefits to which he was entitled under the contract and extensions thereof through 30 June 2024.

## COUNT II
## DUE PROCESS VIOLATION

30.  Doyle's contract with ADE could only be cancelled for the causes described therein, and thus, created a property right protected by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

31.  As described above, ADE acted under color of law when it denied Doyle due process of law by cancelling his contract without notice or an opportunity to be heard and in violation of the terms of the contract.

32.  Doyle cannot bring a breach of contract claim against ADE in state court. Suing ADE is suing the State and the State has sovereign immunity pursuant to article 5, §20 of the Arkansas Constitution. Doyle's only option under State law would be to make a claim with the Arkansas State Claims

Commission. *See Bd. of Trustees of Univ. of Arkansas v. Andrews*, 2018 Ark. 12, 12, 535 S.W.3d 616, 623 (2018) (remedy is to make a claim with Arkansas State Claims Commission).

33. The ability to make a claim with the Arkansas State Claims Commission does not provide an adequate post-deprivation remedy in this case because Doyle's claim will be for more than $15,000.00, and the Arkansas Claims Commission cannot award relief above $15,000.00. Ark. Code Ann. § 19-10-215(b) ("If the award is greater than fifteen thousand dollars ($15,000), the claim shall be referred to the General Assembly for an appropriation."). Doyle's claim will be referred to the General Assembly and the "General Assembly has total control over the determination of and subsequent funding for payment" of claims. *Fireman's Ins. Co. v. Arkansas State Claims Comm'n*, 301 Ark. 451, 458, 784 S.W.2d 771, 775 (1990). There is no standard limiting the General Assembly's discretion to pay claims, and thus, the General Assembly can arbitrarily deny Doyle's claim leaving Doyle with no remedy. Accordingly, the State procedures for challenging ADE's breach of contract are inadequate and do not meet due process standards.

34. As a direct and proximate result of ADE's denial of due process, Doyle has lost and will continue to lose income and the other benefits to which he was entitled under the contract and extensions thereof through 30

June 2024; and, Doyle has suffered and will continue to suffer in the future emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

## COUNT III

## DISABILITY DISCRIMINATION

35. ADE is a public entity that operates a program or activity receiving federal financial assistance. Specifically, the ADE receives IDEA funding and in return has agreed to comply with the IDEA, §504 of the Rehabilitation Act of 1973 ("§504"), 29 U.S.C. §794(a), and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12132.

36. ADE waived its Eleventh Amendment sovereign immunity to suits brought in federal court for violations of §504 and Title II of the ADA by accepting IDEA funding. *See* 42 U.S.C. §2000d-7; *Jim C. v. U.S.*, 235 F.3d 1079, 1082 (8th Cir. 2000) (State waived sovereign immunity with respect to §504 claims against ADE).

37. Retaliation is prohibited disability discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005) ("Retaliation is, by definition, an intentional act. It is a form of 'discrimination' because the complainant is being subjected to differential treatment."). Both §504 and Title II regulations prohibit retaliation. *See* 28 CFR § 35.134 (Title II); 34

CFR §104.61 (§504 - incorporates Title IV regs); 34 CFR §100.7(e) (Title IV).

38. As described above, ADE unlawfully discriminated against Doyle by retaliating against him for his decisions in favor of Student.

39. Doyle's hearing officer decisions are statutorily protected activity.

40. ADE retaliated against Doyle by cancelling his contract.

41. There is a causal connection between Doyle's protected activity and the cancelling of his contract.

42. As described above, ADE cannot proffer a legitimate nondiscriminatory reason for cancelling Doyle's contract. The reason given for cancelling the contract was a pretext for unlawful discrimination.

43. As a direct and proximate result of ADE's unlawful discrimination, Doyle has lost and will continue to lose income and the other benefits to which he was entitled under the contract and extensions thereof through 30 June 2024; and, Doyle has suffered and will continue to suffer in the future emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

44. Plaintiffs demand a jury trial.

WHEREFORE, Plaintiffs pray that they be awarded compensatory damages for their pecuniary and nonpecuniary losses in an amount consistent with the evidence presented at trial and determined by a jury; that they be awarded their

costs and attorneys' fees expended herein; and, that they be awarded all other just and proper relief to which they may be entitled.

Respectfully submitted,

Theresa L. Caldwell (Ark. Bar No. 91163)
**CALDWELL LAW OFFICE**
14 Alban Lane
Little Rock, Arkansas 72223
501-414-0434
Fax: 501-325-1502
tlcatty@gmail.com

_____
Theresa L. Caldwell

*Attorney for Robert B. Doyle and*
*Behavior Management Systems, Inc.*